## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| JOHNATHON D. FITTS, | CASE NO. 3:21-CV-00161-SO |
| Petitioner, | JUDGE SOLOMON OLIVER, JR. |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN TIM SHOOP, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On January 21, 2021, Petitioner Johnathon D. Fitts filed a *pro se* petition for a writ of habeas corpus. (ECF #4). The District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2254(a). On January 27, 2021, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge to prepare a Report and Recommendation. (Non-document entry of Oct. 14, 2020). On May 26, 2021, the matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 26, 2021). Respondent (hereinafter, the  State) filed the Return of Writ on March 29, 2021. (ECF #10). Mr. Fitts filed the Traverse on June 8, 2021. (ECF #16).

For the reasons discussed below, I recommend the District Court **DENY** the Petition. I further recommend the District Court **DENY** a Certificate of Appealability for all grounds for relief.

1

PROCEDURAL HISTORY

**A.  Factual Findings of the Court of Appeals**

On direct appeal, the Ohio Court of Appeals, Sixth Appellate District, set forth the facts of this case. In habeas corpus review, state court factual findings are presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir.), *cert. denied*, 571 U.S. 1077 (2013). The Sixth District determined:

> [¶ 2] In January of 2017, M.T. approached Charles Broshious, the chief of the Bradner Police Department, and offered to act as a confidential informant in an arranged drug buy. M.T. said that she had a daughter who recently died from using illegal narcotics, and she was "tired of it" and wanted to help "catch somebody." She also explained that she had recently been arrested in Sandusky County after drugs were found in the vehicle she was driving. She hoped that her cooperation would secure her leniency in that case.

> [¶ 3] Working with Chief Broshious and other officers, including Officer Jakob Rinehammer and Officer Jeremy Salaz, M.T. arranged three drug buys with a dealer she knew as "Memphis." She arranged all three buys by communicating with him over text messaging or Facebook messenger. Chief Broshious maintained copies of M.T.'s messages with Memphis by either forwarding the messages to his email or taking snapshots of the messages on M.T.'s phone, which he then forwarded to his email.

> [¶ 4] Before each buy, officers followed the same protocol: they photocopied the money to be used for the purchase; they patted M.T. down to ensure that she had no contraband before the purchase; they stationed officers to maintain a visual of M.T.; they ensured that the vehicles used to transport M.T. to the exchange sites were free of contraband; and they provided M.T. with a camera watch and a voice recorder. Each buy was recorded on audio and videotape. After each buy, M.T. gave the officers the substance she purchased, and she was taken to the police station where she was patted down again. Officers used a NIK testing kit to test the substance purchased for the presence of illegal drugs.

> [¶ 5] The first transaction occurred on January 23, 2017. M.T. purchased $300 worth of crack cocaine and paid $20 for the gas associated with delivering the drugs. The exchange took place outside a bar in Bradner. Memphis was driven to the location

by a white male driving a maroon Chrysler. The substance provided to M.T. tested positive for the presence of cocaine.

[¶ 6] The second transaction occurred on January 25, 2017. M.T. purchased $175 worth of cocaine and paid $20 for gas. The exchange took place outside a laundromat in Bradner. The drugs were delivered by the same white male driving the same maroon Chrysler. He was accompanied by a heavyset woman; Memphis was not in the car. M.T. expressed to the driver—and to Memphis via text message—that she was unhappy that Memphis did not personally deliver the drugs. The driver told M.T. that "John" was busy and that he had been running for him for a while, and Memphis assured her that the man he sent was his runner and it was okay. The substance provided to M.T. tested positive for the presence of cocaine.

[¶ 7] The third transaction occurred on January 31, 2017. M.T. purchased $2,500 worth of cocaine and paid $20 for gas. The exchange again took place outside the laundromat. Memphis was a backseat passenger in a silver Durango. The driver was a white male and the front-seat passenger was a black male. Neither the driver nor the passenger were present for the first two transactions.

[¶ 8] After the third transaction was completed, officers closed in and arrested Memphis and the two other occupants of the vehicle. Memphis disclosed that his real name is Johnathan Fitts. Cash matching the serial numbers of the cash provided to M.T. was found within Fitts's reach. The officers called the phone number associated with the text messages on M.T.'s phone, and the call rang on Fitts's telephone. At the police station, the substance sold to M.T. tested positive for the presence of cocaine.

[¶ 9] Fitts was charged in Wood County case No. 2017-CR-0056 with trafficking in cocaine in an amount greater than 20 grams but less than 27 grams, a violation of R.C. 2925.03(A)(1) and (C)(4)(e) (Count 1); complicity in the commission of an offense, a violation of R.C. 2923.03(A)(2) and (F) (Count 2); and trafficking in cocaine in an amount less than five grams, a violation of R.C. 2925.03(A)(1) and (C)(4)(a) (Count 3). After failing to appear for a final pretrial, Fitts was also charged in Wood County case No. 2018-CR-0416 with failure to appear as required by recognizance, a violation of R.C. 2937.22.

[¶ 10] Before the case could be tried, M.T. was killed in an accidental house fire. The state moved in limine to admit M.T.'s statements at trial under Evid.R. 801(D)(2)(e), as the statements of a co-conspirator. Fitts filed a cross-motion, asking that M.T.'s oral and written statements—specifically witness statements that were written on police-department letterhead after each buy and oral statements that were recorded in police reports—be excluded as violating the confrontation clause of the Sixth Amendment to the U.S. Constitution.

3

[¶ 11] The trial court ruled in favor of the state. It held that even though she was acting as a confidential informant for the state and was not engaging in the purchase of cocaine in furtherance of a criminal endeavor, a conspiracy existed between M.T. and Fitts; the court described it as a "unilateral conspiracy." It concluded that the text messages between M.T. and Fitts were statements by co-conspirators made in the course of and in furtherance of the conspiracy under Evid.R. 801(D)(2)(e). It found that admission of the statements would not violate Fitts's right to confrontation because the statements were non-testimonial in nature.

[¶ 12] The case was tried to a jury on November 14-15, 2018. Chief Broshious, Officer Rinehammer, and Officer Salaz testified. The trial court admitted into evidence the audio and video recordings of the transactions taken on the watch worn by M.T. and the recorder carried in her pocket, and it admitted copies of the Facebook and text messages exchanged between M.T. and Fitts.

[¶ 13] The jury found Fitts guilty on all counts.

(ECF #10-1 at PageID 206-28; *see also State v. Fitts,* Nos. WD-18-092, WD-18-093, 2020 WL 1492568, at *1-2 (Ohio Ct. App. 2020)).

**B.    Trial Court Proceedings**

On February 16, 2017, a grand jury indicted Mr. Fitts on two counts of trafficking in cocaine and one count of complicity in the commission of an offense. (ECF #10-1 at PageID 96-98). The trial court appointed counsel and Mr. Fitts pled not guilty to all counts. (*Id.* at PageID 99-100). On September 6, 2018, a grand jury indicted Mr. Fitts on one count of failure to appear. (*Id.* at PageID 101-02). The trial court appointed new counsel and Mr. Fitts pled not guilty. (*Id.* at PageID 103-04). The court joined the cases for purposes of trial. (*Id.* at PageID 105).

On November 7, 2018, the State filed a motion in limine for an order allowing M.T.'s statements under Ohio Evidence Rule 801(D)(2)(e), noting M.T. was not available to testify. (*Id.* at PageID 106-08). In response, counsel for Mr. Fitts requested an order excluding all M.T.'s written and oral statements. After a hearing, the trial court granted the State's motion to allow M.T.'s statements into evidence and denied Mr. Fitts's motion to exclude them. (*Id.* at PageID 112-16).

4

On November 15, 2018, after a two-day trial, the jury convicted Mr. Fitts of two counts of trafficking and one count of complicity and, on November 19, the trial court imposed an aggregate prison term of 7 years and 10 months, to be served concurrently with a previously imposed sentence. (*Id.* at PageID 117-21). The trial judge also accepted Mr. Fitts's guilty plea for failure to appear and imposed a 17-month prison term to be served concurrently with his previously imposed sentences. (*Id.* at PageID 122-27).

## C.    Direct Appeal

On December 19, 2018, Mr. Fitts, through new counsel, filed a notice of appeal (ECF #10-1 at PageID 131) and raised the following assignments of error:

1.    The trial court abused its discretion and denied Appellant his fundamental right to a fair trial and his Sixth Amendment right to confrontation of witnesses, by permitting the State to submit audio, video and text messaging evidence obtained through the use of a confidential information when the informant was deceased and no longer available for appellant to confront at trial.

2.    The trial court erred in denying Appellant's Rule 29 Motion.

3.    The jury's verdict was against the manifest weight of the evidence presented at trial.

4.    The trial court committed error to the prejudice of appellant by imposing the costs of prosecution without consideration of Appellant's present or future ability to pay.

(ECF #10-1 at PageID 140-74). On March 27, 2020, the Sixth District overruled Mr. Fitts's assignments of error and affirmed his conviction and sentence. (ECF #10-1 at PageID 206-28; *see also Fitts*, 2020 WL 1492568, at *1-2). Mr. Fitts did not appeal the decision to the Supreme Court of Ohio.

D.    **Motion for Post-Conviction Relief**

On January 21, 2020, Mr. Fitts filed a *pro se* petition for post-conviction relief and motion

for the appointment of counsel, asserting the following grounds for relief:

1.    Petitioner was denied the right to face his accuser as guaranteed by the Sixth
      and Fourteenth Amendments.

2.    Petitioner was denied the right to effective assistance of counsel for counsel's
      failure to challenge the authenticity of the text messages.

3.    The judge abused his discretion when he allowed the unauthenticated
      hearsay text messages to be used as evidence.

(ECF #10-1 at PageID 291-96). On March 3, 2020, the trial court denied both the petition and the

request to appoint counsel. (*Id.* at PageID 297-304). Mr. Fitts did not appeal the decision.

E.    **Application to Reopen the Direct Appeal**

On July 24, 2020, Mr. Fitts filed a *pro se* application under Ohio Appellate Rule 26(B) to

reopen the direct appeal, claiming appellate counsel was ineffective for failing to raise an

ineffective assistance of trial counsel claim for not objecting to the admission of audio and video

recordings of the drug transactions; he claimed the ineffectiveness of trial counsel resulted in a

conviction in violation of his Sixth Amendment rights to a fair trial and to confront witnesses. (*Id.*

at PageID 244-48). On August 7, 2020, the Sixth District denied Mr. Fitts's application. (*Id.* at

PageID 259-67).

On September 8, 2020, Mr. Fitts appealed the Sixth District's decision to the Supreme

Court of Ohio, raising the following propositions of law:

1.    Appellant counsel was ineffective under the Sixth Amendment to the United
      States Constitution, for not objecting to the audio and video, which did not
      have a meaningful discussion, and this prejudiced the defendant from having
      a fair trial.

2. The appellant attorney was ineffective for not admitting that the State's evidence was insufficient and manifest of evidence was not admitted for a guilty verdict. This created a plain error which may be noticed but not brought to the attention of the court which this created a miscarriage of justice, and violated 14th Amendment due process of law.

3. The appellant attorney never argued that the Sixth Amendment was violated because the defendant never got to cross-examine the confidential informant. This was the only witness to the state's case, this violated the United States Constitution and Ohio Constitution, and Bill of Rights, the Confrontation Clause violated, which this does protect all defendants the right to confront witness also this is plain error, also defendant was not on a conspiracy charge. The defendant was entrapped into a drug buy.

(*Id.* at PageID 268-89) (cleaned up). On November 24, 2020, the Supreme Court of Ohio declined

jurisdiction of Mr. Fitts's appeal. (ECF #10-1 at PageID 290; *see also State v. Fitts*, No. 2020-1083,

157 N.E.3d 792 (Ohio 2020) (table)).

## FEDERAL HABEAS PETITION

Mr. Fitts, *pro se,* filed this federal habeas petition raising the following grounds for relief:

**Ground One**: Appellant counsel was ineffective under the Sixth Amendment for not objecting to audio and video, which prejudiced defendant of a fair trial.

**Supporting Facts**: At trial, counsel erred with respect to the admission of audio and video recordings of the confidential informant.

**Ground Two**: Appellant counsel was ineffective for not admitting that the prosecutor's evidence was insufficient and manifest of evidence was plain error.

**Supporting Facts**: Plain error may be noticed even if not brought to the attention of the court at trial prosecutor at no time produced any cocaine that was alleged seized they never admitted cocaine as a exhibit which this created plain error and prejudiced the defendant which in not having a fair trial. Which means that the prosecutor failed to produce any relevant evidence, no witnesses, no evidence to warrant a conviction.

**Ground Three**: Appellant attorney never argued that the defendant never got to cross-examine the confidential informant, the only witness.

7

**Supporting Facts**: Sixth Amendment was violated Ohio Constitution, and the Bill of Right violated which this defendant never at no time was given the right to confront the state's witnesses, the defendant was also entrapped into a drug deal, which appellant attorney was in severe ineffective. This appeal has created plain error which this may be admitted for justice, and this defendant was not given a fair trial.

(ECF #4 at PageID 6-9).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Fitts's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes

8

"the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444

F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

**Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661

(N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims barring federal court review. *Williams,* 460 F.3d at 806; *Shinn v. Ramirez,* 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million,* 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan,* 566 U.S. 1, 10 (2012); *see also Coleman,* 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Furthermore, futility cannot constitute cause for the procedural default of a claim for failure to raise a claim on direct review if it means simply that a claim was "unacceptable to that particular court at that particular time." *Engle v. Isaac*, 456 U.S. 107, 130, n.35 (1982).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623

14

(1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

DISCUSSION

**A.  Grounds Two and Three are procedurally defaulted.**

Mr. Fitts's Grounds for Relief are the same claims he pursued in his appeal of the Sixth District's denial of his application to reopen the direct appeal to the Supreme Court of Ohio. The State claims Grounds Two and Three are procedurally defaulted because Mr. Fitts raised only the claim in Ground One in his Appellate Rule 26 (B) application to the Sixth District and added the claims raised in Grounds Two and Three on appeal to the Supreme Court of Ohio. (ECF #10 at PageID 76-77).

Discussed above, a claim may be procedurally defaulted when the petitioner fails to raise and pursue it through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 848. This is so because "[i]ssues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition." *Baston*, 282 F. Supp. 2d at 661. In Ohio, a constitutional question cannot be raised in the Supreme Court of Ohio unless it was presented and argued in the lower court. *State v. Phillips*, 272 N.E.2d 347, 352 (Ohio 1971). The Supreme Court of Ohio will not consider errors unless they were first raised and preserved in the court of appeals. *Id.* As such, an issue raised for the first time in the Supreme Court of Ohio is waived and

15

is not properly exhausted for purposes of federal habeas review. *See Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Phillips*, 272 N.E 2d at 352. When a petitioner does not fairly present to the state courts the claim for which relief is sought in federal court, and the opportunity to raise that claim in the state courts has passed, the claim is procedurally defaulted. *O'Sullivan*, 526 U.S. at 853-54.

I agree with the State that Mr. Fitts has procedurally defaulted his ineffective assistance of appellate counsel claims in Grounds Two and Three because he raised them for the first time in his appeal to the Supreme Court of Ohio without first raising it in his Rule 26(B) application to the Sixth District. On direct appeal, Mr. Fitts claimed, *inter alia*, the trial court erred in permitting the State to admit evidence of audio, video, and written statements between him and a confidential informant "when the informant was deceased and no longer available for appellant to confront at trial," and the jury's verdict was against the manifest weight of the evidence. (ECF #10-1 at PageID 141). The Sixth District analyzed the confrontation claim and found no error in the trial court's admission of the audio and video recordings and copies of the text and Facebook messages. (ECF #10-1 at PageID 211-21; *Fitts*, 2020 WL 1492568, at *3-7). The Sixth District also found Mr. Fitts's manifest weight argument not well-taken. (ECF # 10-1 at PageID 224-25; *Fitts*, 2020 WL 1492568, at *8-9). Mr. Fitts did not appeal this decision to the Supreme Court of Ohio.

In his Rule 26(B) application to reopen the direct appeal, Mr. Fitts claimed appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel in not objecting to the admission of statements between him and the confidential informant. (*Id.* at PageID 264). The Sixth District affirmed the Confrontation Clause analysis made on direct appeal and, "[b]ecause [it] had] already concluded that the audio and video recordings and the print-outs of the text messages

16

and Facebook messages were properly admitted into evidence," determined Mr. Fitts could not

show ineffective assistance of trial counsel under the *Strickland* standard. (*Id.* at PageID 265-66).

On appeal from the Sixth District's decision, Mr. Fitts reasserted that claim (Proposition of Law

No. 1) and presented additional claims of ineffective assistance of appellate counsel for failing to

raise manifest weight and insufficiency of the evidence claims (Proposition of Law No. 2) and

failing to raise the Confrontation Clause claim and an entrapment defense (Proposition of Law

No. 3). (*Id.* at PageID 272).

 Because Mr. Fitts raised Grounds Two and Three for the first time in the Supreme Court

of Ohio (as Propositions of Law Nos. 2 and 3), they are procedurally defaulted. *Leroy*, 757 F.2d 99;

*Phillips*, 272 N.E.2d at 352. Unless Mr. Fitts can show either cause for the default and resulting

prejudice, or that failing to review the claims on the merits will result in a fundamental miscarriage

of justice, procedural default bars this Court's consideration of his claims.

 In his Traverse, Mr. Fitts addresses procedural default as follows:

> [W]hereas the respondent is stating that this petitioner procedurally defaulted on
> second and third arguments. However, the Federal Courts do not in demand of
> litigating these arguments; this habeas corpus is only to show that these are
> substantial grounds for relief to reopen the appeal under 26(B), "Ineffective
> Appellant Counsel," which this Brief is in full opposition to the Respondent
> allegations of return of writ.

(ECF #16 at PageID 726). Mr. Fitts asserted neither cause and prejudice nor that failing to review

the claims will result in a fundamental miscarriage of justice; therefore, I recommend the District

Court **DISMISS** Grounds Two and Three as procedurally defaulted.

**B.** **Ground One is meritless.**

 In his first ground for relief, Mr. Fitts claims appellate counsel was ineffective for not

objecting to the deceased confidential informant's audio and video recorded statements. (ECF #4

17

at PageID 6). Supporting this ground, Mr. Fitts states "[a]t trial counsel error with respect to admission of audio and video recording of confidential informant." (*Id.*). On its face, this ground for relief asserts that appellate counsel should have objected at trial to the admission of those statements. Mr. Fitts appears to confuse the distinct roles trial counsel and appellate counsel play on his behalf. Appellate counsel played no part in Mr. Fitts's trial and, therefore, was not in any position to object to the admission of recorded statements at trial. Liberally construing these allegations "to encompass any allegation stating federal relief," *see Franklin v. Rose,* 765 F.2d 82, at 84-85 (6th Cir. 1985), I assume Mr. Fitts means to argue his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel who did not object to admission of the audio and video recordings presented, as he did in his application to reopen the direct appeal filed with the Sixth District. (*See* ECF #10-1 at PageID 246).

The Sixth District addressed the substantive claim on direct appeal as follows:

[¶ 15] In his first assignment of error, Fitts argues that the trial court erred when it admitted audio, video, and text messaging evidence.

* * *

### A. Right to Confrontation

[¶ 16] Fitts argues in his first assignment of error that the trial court erred when it admitted into evidence audio and video recordings of the drug buys and copies of the text messages between M.T. and Fitts. He maintains that this evidence was testimonial in nature and argues that because M.T. was not subject to cross-examination, the admission of the evidence violated his Sixth Amendment right to confront the witnesses against him. He also claims that the state failed to prove that he and M.T. were involved in a conspiracy, therefore, the trial court erred when it relied on Evid.R. 801(D)(2)(e) as authority for its evidentiary ruling.

[¶ 17] The Sixth Amendment provides an accused the right to be confronted with the witnesses against him. In *Crawford,* the U.S. Supreme Court held that a defendant's right to confront the witnesses against him is violated when the court admits out-of-court statements that "are testimonial and the defendant has had no

opportunity to cross-examine the declarant." "The key issue is what constitutes a testimonial statement: 'It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" A statement will be said to be "testimonial" if "it is made with a primary purpose of creating an out-of-court substitute for trial testimony."

[¶ 18] We ordinarily review a trial court's evidentiary rulings under an abuse-of-discretion standard. But where those rulings implicate a defendant's rights under the confrontation clause, we conduct a de novo review.

### 1. The Audio and Video Recordings

[¶ 19] Fitts challenges the admission of the audio and video recording of the drug transactions. He did not raise this objection at trial. In fact, at trial, counsel for Fitts specifically expressed to the court that she had no objection to the admission of the audio and video recordings ("Your Honor, I'm not objecting to the admission of the audio and video.").

[¶ 20] Fitts does not acknowledge the fact that his counsel acceded to the admission of the recordings. The fact that she did leads us to conclude that Fitts has waived any error in the admission of the recordings.

[¶ 21] The Ohio Supreme Court recognized in *State v. Payne*, that there is a critical distinction between the terms "waiver" and "forfeiture" as applied to the preservation of objections for appeal. Forfeiture "is a failure to preserve an objection," while waiver "is the intentional relinquishment or abandonment of a right." An objection that has been forfeited "'does not extinguish a claim of plain error under Crim.R. 52(B)'"; however, an objection that has been waived "'cannot form the basis of any claimed error under Crim.R. 52(B)'" unless the error is structural.

[¶ 22] Because counsel for Fitts specifically stated that she had no objection to the admission of the audio and video recordings, Fitts has waived the right to claim error.

[¶ 23] But as Justice Cook laments in her dissenting opinion in *McKee* "[w]hile waiver and forfeiture are not the same, courts 'have so often used them interchangeably that it may be too late to introduce precision.'" The conflation of these terms has led courts to engage in plain-error analyses where none was warranted.

[¶ 25] Even if we were to apply a plain-error analysis, Fitts's challenge to the admission of the audio and video recordings would fail. Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. Plain error should be found "only in exceptional circumstances and only to

prevent a manifest miscarriage of justice." "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error."

[¶ 25] Ohio courts have routinely recognized that "audio recordings of actual drug transactions are not hearsay, and * * * the introduction of such recordings does not violate the confrontation clause." The trial court did not err in admitting the audio and video recordings of the drug transactions.

## 2. The Text Messages

[¶ 26] Fitts also challenges the trial court's decision admitting evidence of his text messages with M.T. and insists that the state failed to prove that a conspiracy existed between Fitts and M.T. such that Evid.R. 801(D)(2)(e) would allow admission of those statements. The state counters that evidence of the recordings and messages were properly admitted because they were non-testimonial in nature and, therefore, not subject to the protections of the confrontation clause, and it maintains that they were properly found to be statements of a co-conspirator that were admissible under Evid.R. 801(D)(2)(e). The state also argues that Fitts failed to preserve this issue for appeal because he did not object when the officers testified about the content of the text messages; rather he waited to register an objection until the state moved for the admission into evidence of the copies of the text messages.

[¶ 27] The trial court relied on Evid.R. 801(D)(2)(e) in admitting M.T.'s statements. Evid.R. 801(D)(2)(e) provides that "[a] statement is not hearsay if * * * [t]he statement is offered against a party and the statement is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." The court concluded that M.T. was engaged in a conspiracy with Fitts to sell and purchase cocaine.

[¶ 28] We do not agree with the trial court's conclusion. As concluded by a number of federal courts applying the analogous federal rule, a confidential informant is not a co-conspirator for purposes of Evid.R. 801(D)(2)(e).

[¶ 29] We, therefore, reject the trial court's reasoning here. Nevertheless, we find that evidence of the text messages between Fitts and M.T. was properly admitted. "A judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant."

[¶ 30] Statements that are nonhearsay "do not implicate the Confrontation Clause." Accordingly, "[a] necessary question when evaluating an alleged Confrontation Clause violation is whether the out-of-court statement constitutes hearsay or nonhearsay." Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Under Evid.R. 801(A), a "statement" is "(1) an oral

or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."

[¶ 31] Fitts's end of the text messages are admissions by a party-opponent and do not constitute hearsay under Evid.R. 801(D)(2)(a). As for M.T.'s end of the text messages, those text messages are either not "statements" or were not offered for the truth of the matter asserted.

[¶ 32] Most of the messages sent by M.T. can be broken down into three categories: (1) "small talk" initiated for the purpose of reestablishing the relationship between M.T. and Fitts; (2) questions posed to Fitts relating to various aspects of the drug transactions; and (3) details relating to the transactions such as quantity, price, and location of the exchanges.

[¶ 33] M.T. engaged in "small talk" with Fitts in reestablishing their relationship. M.T. told Fitts a number of things about herself, including that her daughter passed away, that her phone broke, and that she is living with her brother. These statements were not offered for the truth of the matter asserted, thus the confrontation clause was not implicated.

[¶ 34] M.T. also asked Fitts numerous questions relating to the details of the transactions, such as "Price still the same?', "Anyway we can meet in Bradner? At bar?", "This shit is real right?". When Fitts did not personally appear for the second exchange, M.T. asked "What was that shit!", "How do I know who that was?", "How would you feel if I'd have sent someone for me? You wouldn't fuck with me anymore....right?????", and "What was that suppose [sic] to weigh?". These questions are not "statements." The Sixth Circuit Court of Appeals, applying the analogous federal rule, explained that "a question is typically not hearsay because it does not assert the truth or falsity of a fact. A question merely seeks answers and usually has no factual content." M.T.'s questions were not statements, thus the confrontation clause was not implicated.

[¶ 35] Finally, M.T. sent text messages relating to the details of the purchases—telling Fitts how much money she had to spend, assuring him that she was getting the money together, providing the addresses of the meeting spots, advising him of her arrival at the exchange points, complaining that the cocaine she had been given weighed less than what she had paid for. These messages were not admitted to prove the truth of the matter asserted, but rather to explain the course of the events and the effect on Fitts.

[¶ 36] "[T]the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." To that end, "[a] statement is not hearsay when introduced to show its effect on the listener."

[¶ 37] In *State v. Crocker*, the Fourth District held that text messages between the defendant and an unidentified person were not hearsay statements because the challenged evidence was offered to explain the defendant's activities and give context to his responses. Like the messages in *Crocker*, M.T.'s statements in the text messages with Fitts were offered to show the effect on Fitts, to explain the events, and to provide context—they were not offered to prove the truth of the matters asserted. Admission of the text messages, therefore, did not violate Fitts's Sixth Amendment right to confront the witnesses against him.

[¶ 38] Because we find no error in the trial court's admission into evidence of the audio and video recordings and copies of the text and Facebook messages, we find Fitts's first assignment of error not well-taken.

(ECF #10-1 at PageID 211-21 (citations omitted); *Fitts*, 2020 WL 1492568, at *3-7).

The Sixth District's Rule 26(B) decision affirmed this analysis and addressed the ineffective assistance of appellate counsel claim as follows:

Specifically, Fitts argues that appellate counsel should have argued that trial counsel was ineffective in failing to object to the admission into evidence of the audio and video recordings. He also argues that trial counsel should have objected to the admission into evidence of print outs of text messages between M.T. and Fitts.

App.R. 26(B) governs applications for reopening. It permits a defendant in a criminal case to apply for "reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." An application for reopening must be filed within 90 days from journalization of the appellate judgment, and must present "[o]ne or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation." The applicant must provide "[a] sworn statement of the basis for the claim that appellate counsel's representation was deficient," and "the manner in which the deficiency prejudicially affected the outcome of the appeal," and the application must not exceed ten pages. "An application for reopening shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance on counsel on appeal."

A defense request for reopening under App.R. 26(B)(5) must be assessed under the two-prong analysis found in *Strickland v. Washington*. This requires Fitts to prove (1) that his counsel was deficient for failing to raise the issues he now presents, and (2) that had he presented those issues on appeal, there was a "reasonable probability" that he would have been successful. Fitts "bears the burden of establishing that there

22

was a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal."

First, Fitts has failed to provide a sworn statement as required under the rule.

Second, with respect to the admission into evidence of the audio and video recordings, we have already explained that even though counsel acceded to the admission of this evidence, thereby waiving error, the evidence was nevertheless admissible because under established Ohio law, the recordings are not hearsay and the admission of the evidence did not violate the confrontation clause.

Finally, as to the print-outs of the text messages and Facebook messages, we already rejected this argument in Fitts's direct appeal. We acknowledged in our decision that the trial court admitted this evidence, reasoning that the messages were statements of co-conspirators under Evid.R. 801(D)(2)(e). We disagreed with the trial court's rationale because "[a]s concluded by a number of federal courts applying the analogous federal courts applying the analogous federal rule, a confidential informant is not a co-conspirator for purposes of Evid.R. 801(D)(2)(e)." Nevertheless, we found that the text messages between Fitts and M.T. were properly admitted nonhearsay. We explained that Fitts's end of the text messages were admissions by a party-opponent and do not constitute hearsay under Evid.R. 801(D)(2)(a). As for M.T.'s end of the text messages we found that those text messages are either not "statements" or were not offered for the truth of the matter asserted.

As we explained in our decision, M.T.'s end of the messages can be broken down into three categories: "(1) 'small talk' initiated for the purpose of reestablishing the relationship between M.T. and Fitts; (2) questions posed to Fitts relating to various aspects of the drug transactions; and (3) details relating to the transactions such as quantity, price, and locations of the exchanges." And as for details relating to the transaction, "these messages were not admitted to prove the truth of the matter asserted, but rather to explain the course of events and the effect on Fitts."

Because we have already concluded that the audio and video recordings and the print-outs of the text messages and Facebook messages were properly admitted into evidence, Fitts is unable to prove (1) that his counsel was deficient for failing to raise the issues he now presents, and (2) that had he presented those issues on appeal, there was a "reasonable probability" that he would have been successful. We, therefore, deny his application for reopening.

(ECF #10-1 at PageID 264-66) (cleaned up, citations omitted).

The Sixth District's decision was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, nor was the decision based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d). Mr. Fitts does not argue otherwise, nor does he attempt to rebut the presumption of correctness applied to the Sixth District's factual findings under 28 U.S.C. § 2254(e)(1).

The Confrontation Clause of the Sixth Amendment states "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"; the primary purpose of this is to prevent out-of-court statements from being used against a defendant in lieu of in-court testimony subject to the scrutiny of cross-examination. *Crawford v. Washington,* 541 U.S. 36, 50 (2004). But no confrontation issue arises when out-of-court statements are admitted for purposes other than showing the truth of the matter asserted. *Id.* at 59 n.9. Thus, when recorded statements are offered to give context, they do not offend the Confrontation Clause. *See United States v. Jones,* 205 F. App'x 327, 342-43 (6th Cir. 2006) (finding that confidential informant's statements on a recorded drug buy did not violate the Confrontation Clause when offered to give meaning to defendant's statements on the same recording); *see also United States v. Hendricks,* 395 F.3d 173, 184 (3d Cir. 2005) (holding that "if a Defendant . . . makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the Confrontation Clause does not bar the introduction of the informant's portions of the conversation that are reasonably required to place the defendant['s] . . . nontestimonial statements into context"). As to the substance underlying the ineffective assistance of counsel claim regarding confrontation of the deceased confidential informant, the Sixth District correctly identified *Crawford* as the controlling Supreme Court precedent and reasonably applied federal law.

As to ineffective assistance of appellate counsel for failing to raise the confrontation claim on direct appeal, the Sixth District reasonably applied the *Strickland* standard. Though defense counsel acceded to the admission of the recorded statements, thereby waiving the error, the evidence was "nevertheless admissible because under established Ohio law, the recordings are not hearsay, and the admission of the evidence did not violate the confrontation clause." (ECF #10-1 at PageID 265). As federal habeas courts must, I defer to the state court's interpretation of its own rules of evidence and procedure. *Murray*, 477 U.S. at 491; *Engle*, 456 U.S. at 128-129.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Fitts has not made a substantial showing that he was denied any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court **DENY** Mr. Fitts a certificate of appealability with respect to any ground.

## Conclusion and Recommendation

For the foregoing reasons, I recommend the District Court **DISMISS** the Petition as to Grounds Two and Three and **DENY** the claims in Grounds One as meritless. Finally, I recommend the District Court **DENY** a Certificate of Appealability as to all grounds for relief.

Dated: January 18, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** _See_ **Fed. R. Civ. P. 72(b)(2);** _see also_ **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** _Berkshire v. Dahl,_ **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** _Howard v. Sec'y of Health and Hum. Servs.,_ **932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the**

exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).